[Civ. No. 5557. Fourth Dist. May 29, 1958.]

DONALD F. WATSON, Appellant, v. SATOKO K. WATSON, Respondent.

John Martell for Appellant.

Nathan W. Tarr and Winthrop O. Gordon for Respondent.

GRIFFIN, J.—This appeal comes to us on the judgment roll, affidavits and counteraffidavits in respect to the motion. According to defendant's affidavit plaintiff-appellant, a United States Marine who was stationed in Japan, there married defendant-respondent, a Japanese girl, on July 19, 1953. He was later assigned to Hawaii, where they lived together until May, 1955. He was then reassigned to Orange County and they lived in a hotel in Santa Ana. On June 8, 1955, plaintiff abandoned her and on June 10th, filed this action for divorce on the ground of extreme cruelty. He alleged that there were no children the issue of said marriage and that they acquired certain community property; that he had provided an allotment to her in the sum of $240 per month and asked that this allowance be reduced to $125 per month. The prayer was for divorce, division of the community property, a reasonable allowance for defendant's support, and that such payments cease on the entry of the interlocutory decree. Defendant did not read nor speak English sufficiently to understand it and apparently had no knowledge of the legal effect or purport of the copy of the complaint and summons served upon her on June 24, 1955. According to

her affidavit she had never been in the United States before and had no friends or relatives. She was without the aid of counsel and did not know of her rights in said action or its nature. She alleged that in despair and without funds to employ counsel, she returned to Hawaii four days after service of this process, where she knew Japanese people and could converse with them. She further alleged that she, without fault on her part, never had her day in court and that plaintiff, knowing full well of the circumstances, took undue advantage of her, to the end that she was prevented from having her day in court. Before leaving for Hawaii she, by registered mail, wrote plaintiff and stated she had received the summons for divorce but did not understand why he was doing such a "dirty action against me"; and that she tried to contact him many times about it without success. She said please "stop that summons and divorce procedures . . . I do not know what to do with these papers, so I am sending enclosed in this letter to you . . . How come that you can cheat me like this? No matter what will happen, I always love you." After default was entered plaintiff, on September 28, 1955, obtained an interlocutory decree of divorce, an award of all community property, including real estate standing in their names as joint tenants. He was ordered to pay defendant the minimum allotment provided by the United States Government for one year.

On May 7, 1956, defendant appeared through her local counsel and moved to set aside the default and interlocutory judgment entered on October 3, 1955, on the grounds of "extrinsic fraud and/or mistake," and prayed for attorney's fees and costs to aid in the prosecution of said motion. About December 14, 1955, she communicated with Japanese lawyers in Hawaii, informed them as best she could about the papers she returned to plaintiff. She told them she was pregnant and had been since May, 1955, and would require hospital and medical aid as well as support and maintenance for herself and child, and desired a settlement of their community property interests. This information was communicated to plaintiff's attorney who, in his affidavit, acknowledged receipt of a letter from the Japanese attorneys in Hawaii about December 14, 1955, informing him that they had been retained by defendant to set aside the decree. He stated that he learned that other attorneys previously informed them they had been so retained but he had heard nothing from them; that he was informed by the legal officer at the base

where plaintiff was stationed that he fully advised defendant of her right of defense shortly after she was served with the complaint and summons.

Plaintiff's affidavit states that on June 7, 1955, while they were living in Santa Ana, defendant assaulted and threatened to kill him with a razor; that he left her for fear of his life; that after she was served with summons, his legal officer informed him defendant had consulted with him and wanted plaintiff to drop the divorce proceedings; that he told his attorney to have the legal officer appear for her and that he never heard from defendant since she left the United States and had never been informed that she was pregnant; that if so, he believed the child was conceived while they were living separate and apart.

It is plaintiff's contention on this appeal that the uncontradicted facts show that the trial court abused its discretion in granting the motion; that relief from default should not be granted where defendant knew and understood the nature of the proceedings, and where her failure to appear was due to a change of mind as to defending the action; that ignorance of the law of California, when coupled with gross negligence, would not justify relief from default; that adequate remedy is afforded defendant in another action to determine parentage and support of the child, and no extrinsic fraud or mistake was shown, citing *Baratti* v. *Baratti,* 109 Cal.App.2d 917 [242 P.2d 22]; and 29 California Jurisprudence 2d, page 34, section 118.

It is defendant's argument that she was a war bride, brought to the United States by plaintiff; that within a few days after arriving here he abandoned her in a hotel room without funds, relatives or friends; that she did not understand nor speak English; that she had no sufficient knowledge of her rights after she was served with the complaint and summons and that this was fully corroborated by her actions in returning them to him with the statement that she did not know what to do with them; that she had no advice of legal counsel and did not know the exact nature of the action brought against her by plaintiff, who took advantage of his superior knowledge; that accordingly, when she was informed of her rights she acted promptly, and that it was through plaintiff's fraudulent design and her excusable mistake and inadvertence that she failed to appear within the time prescribed by law to defend her rights.

Had the trial court denied the motion, the order, under the facts related, might well be sustained. Here, we are, in effect, confronted with the finding, in conformity with the motion, that the default and interlocutory judgment were obtained by "extrinsic fraud and/or mistake." The question is whether the showing made by defendant would authorize the order entered. On this ground such an order may be made after six months from entry of default and in the same action. (*Evry* v. *Tremble,* 154 Cal.App.2d 444 [316 P.2d 49].) ▆▆ It is the general rule that a motion to set aside a default judgment is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse in the exercise thereof, an appellate court will not disturb the order of the court below. (See *Stub* v. *Harrison,* 35 Cal.App.2d 685 [96 P.2d 979].) ▆▆ It is also stated there that the general policy in reference to section 473 of the Code of Civil Procedure is that the appellate courts are more inclined to uphold orders vacating defaults upon proper showing than affirming orders denying such motions, and that seems to be the general rule, even though, upon the same showing made, the appellate court would have reached a decision opposed to that of the trial court, and that such conclusion would not necessarily be indicative of an abuse of discretion on the part of the trial court.

▆▆ While the evidence as to actual fraud is somewhat lacking, there are certain circumstances sufficiently indicating that advantage was taken of defendant and she was not sufficiently informed of her rights. It does appear that she had fairly valuable property rights to protect and plaintiff acquired those rights by what might reasonably be said to amount to her ignorance, mistake or inadvertence, without an opportunity on her part to be present, and without a *fair adversary hearing.* This has been held to be a basis for equitable relief and is often called "extrinsic mistake." (Witkin's California Procedure, vol. 3, pp. 2122-2128. See also *Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328] ; *Dei Tos* v. *Dei Tos,* 105 Cal.App.2d 81 [232 P.2d 873].)

The minute entry of the court which is before us indicates that in addition to the affidavits mentioned, witnesses were present at the hearing on the motion on May 22, 1956, and were excused. The motion was then taken under advisement and on May 25th an order was made granting it. Where the appeal is based solely on the clerk's transcript all presumptions are in favor of the order. On appeal, the burden

of showing abuse of discretion or error rests on the appellant. (*Stevens* v. *Stevens,* 129 Cal.App.2d 19, 20 [276 P.2d 139]; *Hayden* v. *Hatch,* 134 Cal.App.2d 765 [286 P.2d 541].) No abuse of discretion here appears.

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.