[Civ. No. 22920.   Second Dist., Div. One.   July 29, 1958.]

SHIRLEY S. GALPER, Respondent, v. MURRAY GALPER, Appellant.

Alex Goldberg for Appellant.

No appearance for Respondent.

LILLIE, J.—On February 3, 1956, plaintiff filed an action for divorce. Defendant was personally served with a copy of the summons and complaint but failed to appear although represented by counsel. Default was entered against him on July 25, 1956. On August 21, 1956, the matter was heard as a default and on August 31, 1956, the court entered an interlocutory decree awarding plaintiff a divorce and, among other things, support for the minor child.

More than nine months after the entry of default, defendant on May 11, 1957, filed a motion to vacate and set aside the interlocutory judgment and entry of default, alleging that a denial thereof would result in "a grave miscarriage of justice due to the connivance of his (defendant's) attorney or said attorney's gross neglect or misconduct in representing the defendant." As a condition to the granting of the motion defendant agreed to submit to a blood grouping test. Accompanying the motion was defendant's proposed answer denying paternity of the child and a cross-complaint for annulment. From the order denying the motion defendant appeals.

The motion was heard entirely on affidavits and counter-affidavits. ▌ In considering an appeal from an order made on a motion based on affidavits, and which involves the determination of a question of fact, if there is any conflict therein, those facts favoring the respondent are accepted by the reviewing court as true, and since all intendments are in favor of the ruling of the lower court, the affidavits in behalf of the successful party are deemed not only to establish the facts directly stated therein, but all facts reasonably to be inferred from those stated. (*DeWit* v. *Glazier*, 149 Cal.App.2d 75 [307 P.2d 1031]; *Doak* v. *Bruson*, 152 Cal. 17 [91 P. 1001]; *West Coast Securities Co.* v. *Kilbourn*, 110 Cal.App. 293 [294 P. 57].)

With this rule in mind the following are the pertinent facts relating to defendant's failure to appear in the divorce action and file his motion to vacate within six months after entry of default.

The parties were married December 17, 1955. Plaintiff claimed to be pregnant by defendant who was then a member of the armed forces, but whose permanent residence was in New York. They separated January 31, 1956. In January, defendant's parents visited Los Angeles, and with them, defendant consulted Seymour Mandel, Esq., whom defendant retained to represent him in the divorce matter. Shortly after separation and on February 3, 1956, Mr. Mandel, de-

fendant, plaintiff, her father and her counsel, conferred in the latter's office where defendant was served with a copy of summons and complaint and order to show cause.

On numerous occasions defendant and his parents consulted with Mr. Mandel, on some, defendant was alone. At all times they discussed the divorce, the child not yet born, and the defendant's rights in the matter. On some occasions they talked about the paternity of the child. After discussing at length with defendant and his parents the facts and the law in the matter, Mandel told them it would be "very difficult for defendant to prove that he was not the father of the child" and to do so would require considerable funds for investigation, the expenditure of which he thought would be wasted. He further advised them that from the facts they gave him plaintiff was entitled to a divorce, defendant was not, and unless an investigation uncovered facts showing otherwise, the court would hold defendant to be the father of the child and that once the court made such a finding it would be virtually impossible to obtain a change in the court's decision. Defendant and his parents told Mandel "they knew of no facts which would show that the defendant was not the father of the child." Defendant told him he had intercourse with plaintiff on more than one occasion at or about the time the child was conceived and "did not know that anyone else had had sexual intercourse with plaintiff." After numerous consultations and extended discussions defendant instructed Mr. Mandel to allow his default to be entered, of which defendant's parents approved, and Mr. Mandel proceeded accordingly. On February 28, 1956, defendant and Mr. Mandel appeared at the hearing on the order to show cause and stipulated that the court order defendant to pay among other things, $40 per month for plaintiff's support and a further sum to be fixed by the court upon the birth of the child.

Shortly thereafter, defendant was discharged from military service and returned to his home in New York on March 6, 1956. In May, defendant contacted a New York lawyer, Jack Pearl, whom he did not retain and who acted only as a friend, who requested information from Mandel concerning the case; and on May 25, 1956, Mandel advised him of the status of the litigation. On July 20, 1956, Mr. Mandel wrote to defendant that the child had been born on July 3, 1956; informed him that plaintiff planned to proceed with the interlocutory decree."at which time the judge will set the support amount payable by you" and requested defendant write him the

amount he would be willing to pay; and advised him to pay up the arrearage that he might be in a better position in the eyes of the court. Defendant at no time personally answered this letter.

Having already known, of his own knowledge, that defendant had been discharged from military service before he left Los Angeles, Mandel wrote him on July 9, 1956, asking him to confirm the fact so he could execute an affidavit of military service accordingly. Defendant did so and on July 19, 1956, Mandel executed the same. Default was entered on July 25, 1956.

Pearl wrote Mandel on July 27, 1956, that defendant was barely able to support himself, discussed further the matter of paternity, the expense involved in trying the issue and the fact that defendant would be subjecting himself to the jurisdiction of the court if he appeared, and asked his opinion in the matter. Mandel replied on August 7, 1956, that the default divorce trial was set for hearing on August 21, 1956, at which time defendant would "have no status inasmuch as we have defaulted." He explained that when defendant and his parents were in California they decided the solution to defendant's problem was a dissolution of the marriage even though defendant would be required to support the child through minority. Mandel advised Pearl that from the facts defendant gave him, a blood test would be a waste of money; that he estimated it would cost him $500 in attorney's fees to litigate the paternity issue, $300 for the blood tests and an additional sum for plaintiff's attorney's fees, and that strong evidence would be needed to overcome the presumption of legitimacy under section 193 of the Civil Code of the State of California.

On August 16, 1956, Pearl answered Mandel that defendant could pay no more support than $5.00 per week; that defendant continued to question the paternity of the child but could not afford to litigate the issue and questioned Mandel's estimate of costs.

Realizing that defendant was becoming increasingiy dissatisfied with the disposition of the case, and to protect him to the best of his ability, Mandel appeared at the default divorce hearing on August 21, 1956. He informed the court that at the time defendant consulted with him it was agreed to let the matter go by default, of which course defendant approved, but since, he has become dissatisfied and asked the court for a continuance to permit defendant to obtain other

counsel. The court denied the motion and granted a divorce to plaintiff, ordering defendant to pay $50 a month each for the support of mother and child. The interlocutory decree was entered August 30, 1956.

Immediately after the hearing on August 21st, Mandel wrote to Pearl informing him what had taken place and that, in denying his motion for continuance, the judge had stated "that new counsel could move to set aside the interlocutory judgment of divorce within six months from the date of judgment." He advised Pearl that had defendant had his present point of view when he was in Los Angeles he would not have undertaken to represent him, and that in his opinion his (Mandel's) method of representation was the best and correct one.

The record discloses that defendant's first attempt to retain local counsel to set aside the default was sometime in December, 1956. Pearl contacted several local counsel who would, or could, not accept the case and on January 28, 1957, defendant finally retained Alex Goldberg, his present counsel, who did not file his motion to vacate the default until May 11, 1957.

There does not appear in appellant's brief a clear and succinct statement of his contention on appeal, but from a reading thereof we believe his claim to be that the trial court erred in denying the motion to set aside the judgment because the action of defendant's counsel leading up to the default was such as to prevent him through "extrinsic accident and mistake" from being heard. By implication appellant abandons any claim to extrinsic fraud, as indeed he should, since it is obvious from the record that such evidence is entirely lacking. If appellant is to prevail on this appeal, he must show an abuse of discretion on the part of the trial court in holding that the facts were not sufficient to justify an exercise of its "inherent power" to vacate the judgment.

A motion to set aside a default judgment is addressed to the sound discretion of the trial court and, in the absence of a clear showing of abuse in the exercise thereof, an appellate court will not disturb the order of the court below. (*Stub v. Harrison,* 35 Cal.App.2d 685 [96 P.2d 979].) In the main, appellant relies upon the language of the court in *Dei Tos* v. *Dei Tos,* 105 Cal.App.2d 81 [232 P.2d 873], to point up the power of the court to vacate a default judgment when a condition not amounting to fraud occurs preventing defendant, through no fault of his, from having his day in court. A reading of the authorities upon which the court there relied,

and the cases of *Hallett* v. *Slaughter*, 22 Cal.2d 552 [140 P.2d 3] and *Bartell* v. *Johnson*, 60 Cal.App.2d 432 [140 P.2d 878], cited by appellant, convinces us that although "extrinsic accident and mistake of fact" may, in some situations, be a proper basis for the exercise of the court's equitable jurisdiction to vacate a default judgment more than six months after entry of default, whether such a condition exists is a question of fact depending entirely upon the particular circumstances in each case. See also *Larrabee* v. *Tracy*, 21 Cal.2d 645 [134 P.2d 265] ▮ The case of *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110], establishes the rule in California that where a divorce has been procured by extrinsic fraud the trial court has "inherent power" and jurisdiction notwithstanding the lapse of the statutory time prescribed in section 473 of the Code of Civil Procedure to purge its records of the fraud by setting aside the former decree. ▮ However, realizing that circumstances not amounting to extrinsic fraud, but of a serious nature for which defendant was not responsible and which prevented him from being heard, may exist to create an injustice, our courts in a limited number of situations have exercised their "inherent power and jurisdiction" to relieve the defaulting party from a judgment where it is probable that an injustice has resulted. The courts have labeled such situations "extrinsic accident" and "mistake of fact" but in doing so, have made it plain that the lack of vigilance on the part of the person seeking to be relieved must be such as would not have occurred with a man of ordinary care and prudence under the circumstances. (*Hallett* v. *Slaughter*, 22 Cal.2d 552 [140 P.2d 3] ; *Soule* v. *Bacon*, 150 Cal. 495 [89 P. 324] ; *Bartell* v. *Johnson*, 60 Cal.App.2d 432 [140 P.2d 878].) Thus, independent of section 473 of the Code of Civil Procedure, the courts have set aside judgments rendered, for example, against an incompetent. This was done in the Dei Tos case. There, defendant was insane at the time the default decree was entered and remained incompetent for approximately three years. Long after the statutory period of six months, he moved to set aside the default on the ground that the action of respondent in procuring the interlocutory and final decrees, knowing he was mentally incompetent, was a fraud on the court. The court therein said, at page 83: "It would be more accurate to say that mistake, rather than fraud occurred, when the plaintiff failed to have a guardian appointed to appear and defend the action," and again at page 85: ". . . defendant was not given

his day in court. Whether this was by fraudulent design or by mere mistake or inadvertence on the part of the plaintiff makes no difference. The principle of law involved is that, through no fault of his, the defendant was not permitted to participate in the proceedings.'' Neither this case nor any other authority we have found throws open the doors of ''extrinsic accident'' or ''extrinsic mistake'' to any and all conduct which may have caused one to default and which might justify the court, independent of section 473 of the Code of Civil Procedure, in exercising its inherent power and jurisdiction, to vacate a judgment rendered against him.

. We have quite a different situation in the case at bar from those found in the cases cited by appellant. Pure and simple, the instant case is one in which defendant, fully advised, and after due consideration, agreed with his lawyer to proceed by way of default, and then later changed his mind—but not decisively or diligently enough to prevent the default from being entered. ▉ Even under section 473 of the Code of Civil Procedure a change of mind is not a ground for vacating a judgment. (*Elms* v. *Elms*, 72 Cal.App.2d 508 [164 P.2d 936].) ▉ It may be true that defendant always questioned paternity of the child in his own mind and wanted to litigate the issue, but it is clear that despite these feelings defendant nevertheless, fully advised in the matter, accepted his counsel's advice and agreed to the method of procedure taken. Defendant knew and understood the nature of the proceedings; was fully advised concerning his rights in the matter; agreed to let the case, including the issue of paternity, go by default and was at all times informed of the status of the litigation. We find no advantage taken of defendant by plaintiff, her counsel, his own counsel, or the court. The record shows defendant was not only dilatory in making known his dissatisfaction with the representation Mr. Mandel had given him, but at no time personally so advised him. After defendant left for New York, with the exception of his letter concerning his military status, he at no time personally communicated with his counsel. He did not answer his letters and requests. However, as soon as counsel was convinced of defendant's attitude in the matter (through indirect means) he immediately did all he could to protect his client by appearing in a proceeding in which defendant had no standing, to ask the court for a continuance. We fail to see wherein defendant's counsel ''connived'' or with whom. Nor does there appear to be gross or any ''neglect'' or ''misconduct'' on his part in

the representation of his client. The trial court could find no justification for vacating the default judgment, nor from the record can we.

Appellant seeks to excuse his failure to file the motion to vacate within six months of entry of default to bring it within the provisions of section 473 of the Code of Civil Procedure, because of "a series of misunderstandings, misinformation and erroneous advice." He claims that he relied upon a statement in counsel's letter of August 21, 1956; that the trial judge, in denying his motion for continuance, told him "that new counsel could move to set aside the interlocutory judgment of divorce within six months from the date of the judgment" which would give appellant until February 21, 1957; whereas, in fact, he had only until January 25, 1957. Regardless of any misunderstanding in this regard, the record shows that defendant again was dilatory. His first effort after August 21, 1956, to contact local counsel was not until the first part of December. Although present counsel was not retained until January 28, 1957, it is interesting to note that he did not file his motion until May 11, 1957.

On appeal the burden of showing abuse of discretion or error rests on the appellant. (*Stevens* v. *Stevens*, 129 Cal. App.2d 19 [276 P.2d 139]; *Hayden* v. *Hatch*, 134 Cal.App. 2d 765 [286 P.2d 541].) No abuse of discretion is manifest in this record. In view of a lack of showing of such abuse on the part of the trial court in denying the motion to vacate, we make no comment upon the matter of blood tests.

Order affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 18, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1958.