[Civ. No. 21794. First Dist., Div. One. Oct. 19, 1964.]

J. HALLAM COPE, Plaintiff, Cross-defendant and Respondent, v. ELIZABETH M. COPE, Defendant, Cross-complainant and Appellant.

Walter T. Winter for Defendant, Cross-complainant and Appellant.

Suren Toomajian, Stark & Champlin, Franklin C. Stark and Richard H. Rahl for Plaintiff, Cross-defendant and Respondent.

SULLIVAN, P. J.—This is an appeal by defendant and cross-complainant from an order denying her motion to set aside an interlocutory judgment of divorce and a dismissal of the cross-complaint filed therein.

On October 20, 1961, plaintiff J. Hallam Cope, a physician, commenced the present action against Elizabeth M. Cope seeking a divorce on the grounds of extreme cruelty. Mrs. Cope answered and filed a cross-complaint for divorce on the same grounds. Eventually the case was set for trial on the regular contested calendar for September 11, 1962.

On that day defendant was not present in court but was represented by her counsel Mr. Golde (not counsel on this appeal). At the beginning of the proceedings Mr. Golde advised the court that a property settlement had been agreed upon between counsel for the respective parties "and our respective clients," that Mrs. Cope was then in the hospital but that her attending physician had assured defendant's counsel that she was "all right," and that both of defendant's doctors "felt it would be in her interest to proceed as per agreement." Counsel for both parties stated to the court that the agreement though prepared was then unsigned but embodied "all of our agreements." The court thereupon heard the testimony of plaintiff and plaintiff's corroborating witness. At the conclusion of the testimony both counsel waived findings of fact and conclusions of law. The court thereupon granted plaintiff an interlocutory judgment of divorce on the grounds of extreme cruelty and made orders for the custody and support of children and for the payment by plaintiff of certain community bills.[1] The court further stated: "The property settlement agreement orally agreed to by the parties, which is to be reduced to writing, is approved and the property will be distributed to the parties in accordance with its terms. . . . [W]hen you have . . . the property settlement agreement executed by the parties, if it is in accordance with the terms here delineated, the Court will approve it."

---

[1]Defendant was given custody of three children of the parties (the fourth child being of the age of majority) subject to visitation rights of plaintiff. Plaintiff was ordered to pay to defendant $100 per month for the support of each minor child and $500 for defendant's own support pursuant to the property settlement agreement.

On the same day, September 11, 1962, an interlocutory judgment and decree of divorce was filed in the action to which was attached a property settlement agreement of even date, signed by both parties as well as by their respective counsel. Such judgment was entered on September 13, 1962.

Almost one year later on September 4, 1963, defendant filed in the court below a "Notice of Motion to Set Aside Interlocutory Judgment and Decree of Divorce (And Property Settlement Agreement Incorporated Therein) and to Set Aside Dismissal of Cross-complaint" on the grounds that such dismissal of the cross-complaint, interlocutory judgment and property settlement agreement incorporated therein "were obtained by extrinsic fraud and/or extrinsic mistake and/or extrinsic factors." In support of her motion defendant filed two affidavits.[2]

Defendant Elizabeth M. Cope's affidavit states in pertinent part: Prior to September 11, 1962, the date set for trial, defendant had been negotiating for a property settlement through her attorney Mr. Golde but she had not agreed to the proposed terms of any agreement at the time of trial. On September 10, 1962, being extremely nervous and upset, defendant called her attorney and told him that her physical, mental and emotional condition was such that she could not proceed to trial on the following day. For approximately three years she had been under the care of Dr. Boyes, a psychiatrist. Her condition becoming progressively worse through the night of September 10 and "fearing that she would suffer a complete collapse and nervous breakdown," affiant went to Samuel Merritt Hospital in Oakland where she was admitted at approximately 3 a.m.[3] Early in the morning of September 11, 1962, she was visited by Dr. Hudson, her physician, who later told her that he had been in

---

[2] Both were actually unsworn declarations executed under penalty of perjury pursuant to Code Civ. Proc., § 2015.5, hereafter referred to as "affidavits."

[3] A copy of the hospital records were attached to the affidavit and incorporated therein. The records reveal, *inter alia*, that affiant was admitted at 3 a.m. on September 11, 1962, and discharged on September 12 at 11:30 a.m. The initial diagnosis was listed as "anxiety state." The report of Dr. Charles Hudson, the physician treating defendant upon her admittance, listed the chief complaint as "headache." Under the title "Present Illness," the report read: "This patient presented herself in the emergency room at 3:30 a.m. demanding admission to the hospital, because of her status as the wife of a physician the hospital supervisor apparently made arrangements for her admission to the hospital and then notified me. The patient apparently was complaining of right side pain in the neck and head. When seen by me at 8:00 a.m.

touch with the court. At about 11 a.m. on September 11 she was visited by Mr. Golde and Dr. Boyes, her psychiatrist. The former told her that the hearing had been concluded and gave her some papers to sign which she did.

After setting forth certain portions of the transcript of the oral proceedings had before the court on September 11, 1962, to which we have already made reference, the affidavit further states: Mrs. Cope had not agreed to the terms of the property settlement agreement as stated in such transcript and had not authorized her counsel to dismiss her cross-complaint. At the time the agreement was presented to her "she was still in the hospital and was in no physical, mental or emotional condition to understand the agreement or the terms thereof." She only recently regained her senses sufficiently to obtain legal help and obtained new counsel (defendant's counsel on this appeal) on July 25, 1963.

The affidavit of Betty Corley, a friend of defendant's, states: Sometime before 3 a.m. on the morning of September 11, 1962, she had received a telephone call from defendant who was "wildly upset." Later that morning Mrs. Corley, together with her husband, attended the divorce hearing, after which Mr. Golde asked them to go to the hospital, saying that the property settlement agreement was a "good deal" and that he wanted them to so convince Mrs. Cope. Mr. and Mrs. Corley went to the hospital and waited in the hall while Mr. Golde and Dr. Boyes entered defendant's room. About ten minutes later both men came out, the attorney telling affiant that defendant had signed the papers and wanted to talk to her. Affiant and her husband then entered the room where they found defendant "crying" and "clasping and unclasping her hands," Mrs. Cope stating: " 'What has happened? . . . What is going on? . . . I am completely confused.' " According to Mrs. Corley, "Mrs. Cope then talked incoherently. She appeared extremely distraught."

Plaintiff filed four affidavits in opposition to defendant's motion.

The affidavit of Suren Toomajian, plaintiff's counsel, states: During the week preceding the date set for trial, Mr. Toomajian and Mr. Golde negotiated for the purpose of settling the property and personal rights of the parties. On Saturday,

the patient was sound asleep. There was a marked odor of alcohol on her breath. She aroused on stimuli but was still somewhat confused. In discussing her problem with her it seems that she was about to appear in a divorce court this morning and just didn't feel up to it. She had all ready [sic] contacted her psychiatrist about this problem.''

September 8, 1962, the parties had reached an agreement which was to be reduced and was in fact reduced to writing by affiant on September 10, 1962, and was delivered to Mr. Golde on the morning of September 11, 1962, prior to the hearing. Mr. Golde at that time advised affiant that defendant was not present and had voluntarily admitted herself to the hospital. The case was then regularly called for hearing, at which affiant appeared for plaintiff and Mr. Golde for defendant.

The affidavit of Dr. Boyes, a licensed psychiatrist, states: Mrs. Cope had been his patient for several years. On September 11 he was present at a conference between Mr. Golde and defendant in defendant's hospital room at which Mr. Golde reviewed with defendant ''paragraph by paragraph'' the terms of the property settlement agreement which the attorney had brought with him. Mr. Golde explained to Mrs. Cope the various features of the agreement; she in turn asked questions which the attorney answered; at the end of the conference which lasted about one-half hour, she signed the papers. Prior to the signing, Mr. Golde asked defendant if she fully understood and desired the settlement as set out and she said that she did. In affiant's opinion ''Mrs. Cope was completely competent throughout the time of this conference, and knew and understood the nature and meaning of the documents presented and explained to her by her attorney. It was apparent to me that she had not wanted to go to court, because she expressed herself as relieved as well as satisfied that the matter had been handled without her having actually to appear. Throughout the conference, she was sitting up in bed, was calm and appeared in full control of all of her senses.''

Dr. Boyes' affidavit also states: Affiant was present at a conference in Mr. Golde's office on September 7, 1962, at which time Mrs. Cope and Mr. Golde reviewed in detail the aspects of a proposed property settlement agreement. After much discussion there was agreement as to the terms of the papers to be drawn and submitted to the parties by September 11, 1962. In affiant's opinion, defendant was fully competent throughout this conference and knew and understood what was being decided and agreed upon.

Dr. Boyes' affidavit further states: He had continued to act as Mrs. Cope's psychiatrist after September 11, 1962. At no time since that date had Mrs. Cope ever told him that she believed she was incompetent or not acting voluntarily

at the time she signed the property settlement agreement. At times she complained to affiant that she "should have gotten more" but also recognized that if the case had been tried "she might have gotten less." In affiant's opinion, Mrs. Cope was not incompetent at the time of the conferences on September 7 and September 11, 1962, nor at any subsequent time.

Plaintiff's affidavit states: Prior to September 11, 1962, the date of the divorce hearing, he had agreed orally, through his attorney, to the terms contained in the property settlement agreement which he signed on September 11. Since that date Mrs. Cope had repeatedly told him that irrespective of the settlement and the court's orders, she was going to do everything possible to see that affiant did not obtain a final decree of divorce and that he stayed married to her.

The affidavit of defendant's attorney, Mr. Golde,[4] states: Prior to September 11, 1962, affiant had been negotiating for a property settlement agreement on behalf of defendant. It is not true that, as defendant claims, she had not agreed to the proposed terms of any agreement prior to the time of trial. On September 7, 1962, affiant had a conference with defendant at his office, at which defendant's psychiatrist Dr. Boyes attended. Affiant had requested defendant to have the doctor present because he wanted to be sure that she fully understood the agreement. Affiant and Mr. Toomajian had had previous conferences and had negotiated sufficiently so that affiant felt there was a reasonable opportunity of settling the matter on a basis advantageous to Mrs. Cope. Accordingly, at the conference with defendant on September 7, he spent approximately two hours discussing the various aspects of the agreement. At the conclusion "she and I had agreed what property settlement agreement terms would be acceptable to her and I had her authority to prepare and submit a property settlement agreement in substance as we had discussed."

Affiant then conferred with Mr. Toomajian on Saturday, September 8, and "reached a meeting of the minds" pursuant to which the case could be settled upon the basis discussed with Mrs. Cope. The two attorneys agreed that Mr. Toomajian would submit the property settlement agreement and have

---

[4]Mr. Golde represented Mrs. Cope until July 25, 1963, at which time he consented to the substitution of Mr. Winter, defendant's present counsel.

it ready for signature by the time of the hearing on September 11.

On the day preceding the trial, September 10, 1962,[5] Mrs. Cope telephoned affiant stating that she wanted him to secure a continuance. He told her that the matter had been regularly set for trial, that a continuance could not be easily obtained without good cause, and that he had delayed the trial as long as he could. Mrs. Cope did not give any specific reason relating to her health but simply said that she didn't want to go to court. Affiant then told defendant that in his opinion she did not have grounds for a continuance and should be in court the following morning, ready to proceed with the hearing.

Mr. Golde's affidavit further states: On arrival in court the next day, he met defendant's witnesses Mr. and Mrs. Corley who told him defendant would not be in court. Later he learned from Dr. Hudson that defendant was in the hospital. Dr. Hudson told him that she was "all right and was physically and mentally able to come to court but simply, in her words, 'didn't feel up to it.' " Affiant also called Dr. Boyes and learned from him that there was no reason why Mrs. Cope could not be in court, except that "she did not choose so to do." Affiant then relates the events pertaining to the divorce hearing, the subsequent conference with defendant at the hospital and the eventual signing of the agreement. During the conference at the hospital defendant "was calm, she seemed to be in full control of herself and said that she was happy and relieved that it had not been necessary for her to go to court." She pointed out to affiant two bills, the payment of which by plaintiff was discussed at the September 7 conference but which was not mentioned in the written agreement. Affiant assured her "that I believed Dr. Cope would care for these two additional items, which subsequently he did. . . . I asked her at the conclusion of our conference whether she fully understood the entire Agreement, whether it was acceptable to her, and she assured me that it was with the exception of the two additional items which I have above referred to." Affiant had Mrs. Cope sign the agreement and in due course delivered executed copies to Mr. Toomajian. In his opinion, she "was completely competent" at all times during the conference on September 11 and felt sure she understood the agreement.

[5]Although not disclosed in the record, Monday, September 10, 1962, was a deferred state holiday.

He assured defendant that the agreement was a "good deal" for her and that defendant agreed that it was "probably better than she would have done had the matter been contested."

Mr. Golde further states in his affidavit: Affiant would not have permitted defendant to sign the property settlement agreement had he believed she was in any way incompetent to execute it or unable for any reason to act freely and voluntarily in connection with it. He believed that under the circumstances there existed no basis for securing a continuance since it appeared to him that defendant had voluntarily hospitalized herself simply to avoid the pressure and strain of the impending court matter. Under the circumstances he felt that her interests were best served by proceeding with the trial after calling the court's attention to defendant's absence and by permitting plaintiff to obtain the divorce decree and securing his signature and that of defendant to the property settlement agreement. Had defendant been present at the trial, he would have sought either to have had the court grant the decree of divorce to her or at least have sought to have the court grant a decree of divorce to each of the two parties.

Mr. Golde's affidavit concludes: "At no time subsequent to the granting of the decree did Mrs. Cope ever complain to me that she was incompetent at the time she signed the Property Settlement Agreement or that she did not fully understand or know what she was doing at that time. She did complain subsequently that she thought she should have gotten more, although she also recognized that she might have gotten less had the matter been contested. She also pointed out to me that what she really wanted to do was to stay married to Dr. Cope and I told her that this was not something which she was able to accomplish through any legal process."

The court below denied defendant's motion and her application for counsel fees and costs.[6] This appeal followed.

---

[6]At the conclusion of the argument on the motion, the court observed that in the light of the evidence there was no reason why defendant could not appear in court, stating: "Actually, what happened on that morning is exactly what she wanted to happen. She knew the trial was going to take place, she knew she did not want to attend and she took this means of, instead of just staying home, of actually just going to the hospital. There is also the other point that there is certainly insufficient evidence to show why she did not move within the six months' period. There is the allegation that she was still emotionally distraught, and this was the first opportunity. But on that basis I am going to deny the motion."

Defendant contends before us that: (1) the judgment and agreement should be set aside because she was prevented by extrinsic factors from presenting her case to the court; (2) the court considered improper evidence in denying her motion; and (3) the court erred in denying her application for counsel fees and costs.

Before we take up these contentions, we must determine whether the trial court's order now sought to be reviewed is appealable.[7] ▪ An order denying a motion to vacate a judgment is a special order after final judgment within the meaning of subdivision 2 of section 963 of the Code of Civil Procedure. (*Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 228-229 [317 P.2d 613]; *In re Yoder* (1926) 199 Cal. 699, 702-703 [251 P. 205]; *Pignaz* v. *Burnett* (1897) 119 Cal. 157, 163 [51 P. 48]; in accord: *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380, 389 [38 Cal.Rptr. 693]; cf. *Agnew* v. *Parks* (1963) 219 Cal.App.2d 696, 703 [33 Cal.Rptr. 465]; *Martin* v. *Martin* (1963) 215 Cal.App.2d 338, 340 [30 Cal. Rptr. 293]; *Simmons* v. *Santa Barbara Ice etc. Co.* (1958) 162 Cal.App.2d 23, 25-27 [327 P.2d 1417]; see also *Fitzsimmons* v. *Jones* (1960) 179 Cal.App.2d 5, 11 [3 Cal.Rptr. 373].) ▪ As a general rule, however, an appeal does not lie from an order denying a motion to vacate or set aside an appealable order or judgment when such motion merely calls upon the court to repeat or overrule its prior decision on the same facts since this would virtually allow two appeals from the same decision and would, in some cases, have the effect of extending the time for appeal from the prior judgment or order. (*Raff* v. *Raff* (1964) 61 Cal.2d 514, 518 [39 Cal.Rptr. 366, 393 P.2d 678]; *Spellens* v. *Spellens, supra,* 49 Cal.2d 210, 228; *Estate of Baker* (1915) 170 Cal. 578, 581-583 [150 P. 989]; *Litvinuk* v. *Litvinuk* (1945) 27 Cal.2d 38, 44 [162 P.2d 8]; *Simmons* v. *Santa Barbara Ice etc. Co., supra,* 162 Cal.App.2d 23, 27; *Agnew* v. *Parks, supra,* 219 Cal.App.2d 696, 703.) There is a well recognized exception to this rule, and an appeal from an order refusing to vacate will lie, where the "circumstances are such that 'an appeal from the first order would be vain for lack of a record showing the rights of the aggrieved party.' [Citations.]" (*Valentin* v. *Valentin* (1949) 93 Cal.App.2d 588, 592 [209 P.2d 654], quoting *In re Yoder, supra,* 199 Cal. 699, 703; in accord:

---

[7]This question was not raised by the parties either in their briefs or at oral argument. Thereafter at our request they filed herein supplemental memoranda directed to the point.

*Spellens* v. *Spellens, supra,* 49 Cal.2d 210, 228-229; *Hall* v. *Imperial Water Co.* (1926) 200 Cal. 77, 80 [251 P. 912]; *De la Montanya* v. *De la Montanya* (1896) 112 Cal. 101, 118-119 [44 P. 345, 53 Am.St.Rep. 165, 32 L.R.A. 82]; *Daley* v. *County of Butte, supra,* 227 Cal.App.2d 380, 389; *MacLeod* v. *Tribune Publishing Co.* (1958) 157 Cal.App.2d 665, 669 [321 P.2d 881]; *Johnson* v. *Sun Realty Co.* (1934) 138 Cal.App. 296, 298 [32 P.2d 393]; *Hilliker* v. *Board of Trustees* (1928) 91 Cal.App. 521, 526 [267 P. 367].)

In the instant case defendant's motion was made on the grounds of extrinsic fraud, extrinsic mistake and extrinsic factors. Although an appeal lies from an interlocutory judgment of divorce (Code Civ. Proc., § 963, subd. 2) the record on such appeal would not reflect the above mentioned grounds and therefore would not disclose the "rights of the aggrieved party."[8] The case therefore falls within the exception rather than the general rule set forth above.

We have assumed during the foregoing discussion that the prior judgment was a final one. We must now inquire whether this is in fact so, since the order refusing to vacate the interlocutory judgment of divorce can be held appealable as a "special order made after *final* judgment" (italics added) only if the prior judgment itself is final. (Code Civ. Proc., § 963, subd. 2; *Neilsen* v. *Saylors* (1956) 146 Cal.App.2d 139, 140 [303 P.2d 781].) Although the action was originally set for trial on the contested calendar, the record makes clear that it was heard and disposed of as an uncontested case. Both counsel announced to the court that an agreement had been reached as to property rights which would be, and was, subsequently signed by the parties, approved by the court and made a part of the interlocutory judgment. The plaintiff offered evidence accommodated to an uncontested hearing, consisting of the adequate but not extensive testimony of plaintiff and his corroborating witness. Neither was cross-examined. No evidence was offered by defendant. The discussion between court and counsel at the conclusion of the testimony, which it is unnecessary to

---

[8]On the grounds here specified, defendant may seek relief by invoking the jurisdiction of equity either in an independent action or by a motion addressed to the court rendering the prior judgment. (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 576 [122 P.2d 564, 140 A.L.R. 1328].) Since an appeal would lie from a final judgment denying such relief in an independent action, it would appear to be incongruous to hold that it would not lie from an order to the same effect made in the original case.

detail, indicates that the matter was heard as an uncontested one. Finally, findings of fact and conclusions of law were waived by the parties.

Although defendant had filed an answer and cross-complaint and plaintiff an answer to the cross-complaint, the interlocutory judgment recites that the action came on for trial "on the Complaint of plaintiff above named, and defendant's Answer thereto." The judgment makes no mention of the cross-complaint. Defendant asserted in her subsequent motion and before this court that her former counsel Mr. Golde dismissed the cross-complaint. In his affidavit Mr. Golde does not contradict this. At no time has either of the parties challenged the finality of the judgment, although as we have pointed out, defendant attacked the judgment on other grounds. While the instant record does not contain the minute orders of the court and therefore does not specifically disclose the dismissal of the cross-complaint, we are inclined to believe that this was effectuated consistently with the disposition of the case as an uncontested one. In their supplemental memoranda filed with us, neither of the parties raises any question on this point. We therefore do not have a situation where the trial court failed to decide issues raised by a cross-complaint so as to bring the interlocutory judgment within the rule that a "[j]udgment rendered on a complaint alone, unaccompanied by judgment on a pending cross-complaint, is not a final judgment, and appeal from it may be dismissed on motion." *(Tsarnas v. Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal. Rptr. 629].)[9] It therefore appears that the interlocutory judgment of divorce was a final judgment within the meaning of Code of Civil Procedure section 963 and that the order before us is a "special order made after final judgment" within the meaning of subdivision 2 of that section. We conclude that such order is appealable.

We turn to the merits of the appeal. Defendant by her motion to vacate invoked the broad equitable power of the trial court to grant her relief against extrinsic fraud, extrinsic mistake and "extrinsic factors." The applicable legal principles are settled. ■ "One who has been prevented by extrinsic factors from presenting his case to the court may

---

[9]In accord: *Nicholson v. Henderson* (1944) 25 Cal.2d 375, 381 [153 P.2d 945]; *Verdier v. Verdier* (1962) 203 Cal.App.2d 724, 730-731 [22 Cal.Rptr. 93]; *Crocker-Anglo Nat. Bank v. Kuchman* (1961) 194 Cal. App.2d 589, 591 [15 Cal.Rptr. 230]; *Krug v. Meehan* (1951) 106 Cal. App.2d 554, 556 [235 P.2d 410]; 3 Witkin, Cal. Procedure, § 14, p. 2155.

bring an independent action in equity to secure relief from the judgment entered against him. [Citations.] Where the court that rendered the judgment possesses a general jurisdiction in law and in equity, the jurisdiction of equity may be invoked by means of a motion addressed to that court. [Citations.]'' (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575-576 [122 P.2d, 140 A.L.R. 1328]. In accord: *Lovelace* v. *Greenfield* (1962) 208 Cal.App.2d 827, 831 [25 Cal.Rptr. 482]; *Estate of Helwinkel* (1962) 199 Cal.App.2d 283, 285 [18 Cal.Rptr. 473]; *Preston* v. *Wyoming Pac. Oil Co.* (1961) 197 Cal.App.2d 517, 527 [17 Cal.Rptr. 443]; *Evry* v. *Tremble* (1957) 154 Cal.App.2d 444, 448 [316 P.2d 49], and cases there collected.) ■ Where, as here, the party seeking relief proceeds by motion in the court rendering the judgment, such motion is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse in the exercise thereof the order of such court will not be disturbed on appeal. (*Nicholson* v. *Nicholson* (1948) 85 Cal. App.2d 506, 508 [193 P.2d 112]; *Watson* v. *Watson* (1958) 161 Cal.App.2d 35, 39 [325 P.2d 1011]; *Galper* v. *Galper* (1958) 162 Cal.App.2d 391, 396 [328 P.2d 487]; *Heathman* v. *Vant* (1959) 172 Cal.App.2d 639, 649-650 [343 P.2d 104]; *Davis* v. *Davis* (1960) 185 Cal.App.2d 788, 792 [8 Cal.Rptr. 874]; *Lovelace* v. *Greenfield, supra,* 208 Cal.App.2d 827, 832; *Corey* v. *Weerts* (1963) 214 Cal.App.2d 416, 422 [29 Cal.Rptr. 533]; *Perkins* v. *Dawson* (1963) 222 Cal.App.2d 610, 615 [35 Cal.Rptr. 276].) ■ All presumptions are in favor of the correctness of the order and the burden is upon the appellant to show that the court abused its discretion. (*Watson* v. *Watson, supra,* 161 Cal.App.2d 35, 39-40; *Heathman* v. *Vant, supra,* 172 Cal.App.2d 639, 649-650; *Lukasik* v. *Lukasik* (1952) 108 Cal.App.2d 609, 611 [239 P.2d 497].) ■ Since the issues raised by defendant's motion were tried on affidavits we are bound by the rule that '' '[i]n the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review.' [Citations.] ■ When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.''

(*Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; *Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 699 [321 P.2d 749]; see also *Galper* v. *Galper, supra,* 162 Cal.App.2d 391, 393.)

As we stated above, defendant contends that the interlocutory judgment and property settlement agreement should be set aside because she was prevented by extrinsic factors from presenting her case in the court below. She thus ignores the above rules governing our review and advances an argument which would be more properly directed to the trier of fact. To prevail on this appeal defendant must show that on the instant record the trial court was not justified in withholding its broad power to vacate the judgment and that it therefore abused its discretion. The question is not, as defendant seems to think, whether the court could have made a different decision but whether the decision it made is supported.

The extrinsic factors on which defendant relies fall into two general classifications—those pertaining to the condition of defendant and those pertaining to the conduct of her former counsel. Although defendant originally based her motion in part on "extrinsic fraud," she now concedes before us that "there was no actual fraud on anyone's part." As to her condition, defendant claimed, as we have summarized above, that her physical, mental and emotional condition on September 10, 1962, the day preceding the hearing, was such that she could not proceed with the trial and that at the time the property settlement agreement was presented to her in the hospital she was in no condition to understand its terms. However, the affidavits of both Mr. Golde and Dr. Boyes, which the trial court apparently accepted, defeat defendant's above claim. Both affiants state in substance that the property settlement agreement was reviewed in detail by Mr. Golde with defendant during a conference at the hospital and that at the conclusion of the conference defendant stated that she understood the agreement and that, except for two omitted items, it was acceptable to her. As we have set forth above in the summary of Mr. Golde's affidavit, provision was to have been made for the payment by Dr. Cope of two bills. Defendant's counsel assured her that these would be paid by Dr. Cope and they subsequently were. Dr. Boyes stated that defendant was completely competent throughout the conference and understood the document which the attorney explained to her. Mr. Golde found her calm,

in control of herself, and happy that the case was settled and was of the opinion that she was fully competent and understood the meaning of the agreement.

Furthermore Mr. Golde stated that on the morning of the hearing he had been informed by Dr. Hudson, defendant's attending physician, that defendant was physically and mentally able to come to court but that in her own words " 'didn't feel up to it.' " At the same time he was informed by Dr. Boyes that "there was no reason why Mrs. Cope could not be in court, except that she did not choose so to do." While these statements were hearsay defendant did not object to them or move to strike those portions of the affidavits.

 It is well settled that relevant and material evidence, though incompetent and therefore inadmissible, if received without proper objection or motion to strike, is to be regarded as sufficient to establish a fact and as supportive of an order or judgment. This rule applies to incompetent statements in affidavits. (*Mercantile Trust Co.* v. *Sunset Road Oil Co.* (1917) 176 Cal. 461, 466 [168 P. 1037]; *Falk* v. *Falk* (1941) 48 Cal.App.2d 780, 789 [120 P.2d 724]; *Fallon* v. *Fallon* (1948) 86 Cal.App.2d 872, 874 [195 P.2d 878]; *Vartanian* v. *Croll* (1953) 117 Cal.App.2d 639, 647-648 [256 P.2d 1022]; *Johns* v. *Curry* (1961) 189 Cal.App.2d 94, 98-99 [10 Cal. Rptr. 882]; Code Civ. Proc., § 2009; Witkin, Cal. Evidence, § 723, p. 751; McCormick on Evidence, p. 126.)

 Defendant's claims relating to the conduct of her former counsel may be summarized as follows: that at the time of the hearing she had not in fact agreed to the terms of the property settlement agreement, that Mr. Golde had no authority to dismiss her cross-complaint, that he failed to obtain a continuance and that he presented the property settlement agreement for her signature when she was in no condition to understand its terms. Essentially all of this boils down to the single contention that Mr. Golde without defendant's authority settled the litigation and disposed of the case as an uncontested one. As we have seen, defendant cannot prevail in her claim that she did not understand and accept the property settlement agreement. The trial court impliedly found against her on this point. Moreover by her acceptance and execution of the agreement she not only approved of what had transpired earlier in court but also consented to the consummation of such proceedings with the court's approval of the agreement and signing of the interlocutory decree.

Nor were these developments sudden and unanticipated. As the affidavits of both Mr. Golde and Dr. Boyes, summarized above, make clear, defendant, at a conference at her attorney's office on September 7, 1962, agreed what terms of a settlement would be acceptable to her and authorized her attorney to submit an agreement substantially to that effect. Dr. Boyes, who attended this conference, stated that she was then fully competent and understood what was agreed upon. On the following day Mr. Golde reached an understanding with opposing counsel on the basis agreed upon with Mrs. Cope. Such counsel prepared the written agreement to this effect, which was discussed with the court and eventually signed by defendant.

We find significant supporting evidence in the statements made by Mr. Golde and Dr. Boyes as to defendant's subsequent attitude towards these occurrences. According to Mr. Golde she never complained that she was incompetent when she signed the agreement or that she did not fully understand what she was doing at the time. Dr. Boyes' statement was to the same effect. Indeed, as Mr. Golde's affidavit avers, Mrs. Cope's real purpose seems to have been to remain married to Dr. Cope.

The trial court was warranted in concluding from the foregoing evidence that Mrs. Cope was fully aware of what she was doing on the day of the hearing, that by signing the agreement she approved and ratified the acts of her counsel, that, as the trial court observed (see fn. 6, *ante*) "what happened on that morning is exactly what she wanted to happen," and that defendant was not prevented by any extrinsic factors from presenting her case in court.

It is also urged that the court rendering the judgment should have continued the case on its own motion and that both court and counsel were confused and in error concerning the nature and effect of the property settlement agreement. Neither of these points were raised on defendant's motion in court below and therefore need not be considered on appeal. (*Damiani* v. *Albert* (1957) 48 Cal.2d 15, 18 [306 P.2d 780]; *Hearst Publishing Co.* v. *Abounader* (1961) 196 Cal.App.2d 49, 58 [16 Cal.Rptr. 244]; *Buckley* v. *Savage* (1960) 184 Cal.App.2d 18, 32 [7 Cal.Rptr. 328]; 3 Cal.Jur.2d 604.)

Defendant next contends that the court below erred in considering the affidavits of Mr. Golde and Dr. Boyes which, by divulging communications with and information acquired from defendant, violated in respect to Mr. Golde's affidavit

the attorney-client privilege (Code Civ. Proc., § 1881, subd. 2) and in respect to Dr. Boyes' affidavit the physician-patient privilege (Code Civ. Proc., § 1881, subd. 4). Assuming that defendant could have claimed the privilege in each instance, nevertheless the record shows that she at no time asserted such claim either by objecting to the affidavits in question or moving to strike the portions thereof she now finds objectionable. Failure to make timely and proper objection to the testimony of an attorney on the grounds that such testimony is privileged amounts to a waiver of the privilege (*Faylor* v. *Faylor* (1902) 136 Cal. 92, 96 [68 P. 482]; *Clyne* v. *Brock* (1947) 82 Cal.App.2d 958, 965 [188 P.2d 263]) as does the failure to object to the testimony of a physician (*Lissak* v. *Crocker Estate Co.* (1897) 119 Cal. 442, 445 [51 P. 688]; see *Riggs* v. *Riggs* (1963) 223 Cal.App.2d 594, 602, fn. 1 [35 Cal.Rptr. 793]). Defendant complains that she was not given the opportunity to cross-examine. This point has no merit since defendant's motion was properly tried on affidavits. (Code Civ. Proc., § 2009.)

Finally we turn to defendant's claim that the court below erred in denying her motion for attorney's fees.[10] In her affidavit in support of the motion to vacate defendant alleged that she "does not have sufficient means or money with which to pay her attorney's fees in these proceedings" and that Dr. Cope was well able to pay them. Dr. Cope's affidavit did not deny these allegations. At the conclusion of the hearing on the motion the court denied the request of defendant's present counsel for fees.[11]

The court may award such attorney's fees as may be reasonably necessary to maintain or defend any proceedings subsequent to the entry of judgment. (Civ. Code, § 137.3.) Such an award is not a matter of right. (*Chapman* v. *Tarentola* (1960) 187 Cal.App.2d 22, 25 [9 Cal.Rptr. 228]; *Straub* v. *Straub* (1963) 213 Cal.App.2d 792, 799 [29 Cal. Rptr. 183].) "The motion for the allowance of counsel fees and costs in a divorce action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal."

---

[10]Although defendant also applied for costs in the court below, she does not raise such issue here.

[11]The following occurred: "MR. WINTER [Defendant's counsel]: May we have attorney fees for this appearance, Your Honor? THE COURT: No, I can't see that there is any ground for them. MR. WINTER: Well, the motion was made in good faith, as I am sure Your Honor will understand. THE COURT: Yes, it might well have been, but—"

(*Primm* v. *Primm* (1956) 46 Cal.2d 690, 696 [299 P.2d 231] ; *Chapman* v. *Tarentola, supra,* and cases there collected ; *Straub* v. *Straub, supra.*) As we pointed out in *Straub,* the critical question is not whether the attorney ought to be paid but whether the wife has need of the money to maintain the proceedings in question.

In the instant case, the court below had before it the entire file on the case, which disclosed that the wife had received substantial property and other benefits pursuant to the property settlement agreement. The court could reject defendant's statement that she did not have sufficient "means or money" and infer that she did have property of some substantial value. Furthermore the court concluded defendant's motion to vacate "was not founded on any justifiable ground." (*McMahan* v. *McMahan* (1955) 130 Cal.App. 2d 736, 739 [279 P.2d 767].) As we have pointed out (fn. 11, *ante*), the court could find no ground for allowing fees. Nor is it entirely clear to us that as defendant claims the judge "admitted" that the motion was made in good faith. The judge stated that it "might well have been, . . ." (See fn. 11, *ante.*) As pointed out previously, defendant took no action until almost a year after the judgment. She told her former counsel that what she really wanted to do was to stay married to Dr. Cope. The court might well have inferred from this that she did not bring the motion in good faith. We find no abuse of discretion in the denial of attorney's fees.

The order appealed from is affirmed.

Molinari, J., and Bray, J.,* concurred.

A petition for a rehearing was denied October 29, 1964, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1964.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.