[Civ. No. 6927. Fourth Dist. Mar. 25, 1963.]

GUS D. COREY et al., Plaintiffs, Cross-defendants and Appellants, v. EBERHARD F. WEERTS et al., Defendants, Cross-complainants and Respondents.

Whelan & Miller and Thomas Whelan for Plaintiffs, Cross-defendants and Appellants.

Burch, Gregory & Platt, Oakes & Horton and R. Sherman Platt for Defendants, Cross-complainants and Respondents.

GRIFFIN, P. J.—On October 10, 1960, plaintiffs, cross-defendants, and appellants, Gus D. Corey and Helen P. Corey, brought an action for fraud and damages against defendants, cross-complainants, and respondents, Eberhard F. Weerts and his wife, Adeline, et al. The action involved an agreement of sale, dated November 26, 1958, of a going restaurant business, wherein the Coreys agreed to purchase it from defendants on certain specified terms, including a promissory note for $25,475.29, which was secured by a chattel mortgage on the fixtures. Plaintiffs took possession. Payments due on the note were not paid, but were withheld on advice of plaintiffs' counsel. Subsequently, the business was voluntarily closed by the Coreys.

The sequence of facts, as related by counsel for defendants, leading up to the instant question may be generally described as follows. About September 2, 1959, Harry H. Horton, Jr., counsel for defendants, was employed by them to enforce the payment of the note and mortgage

executed by plaintiffs. On September 16, 1959, he made certain demands for payment on Thomas Whelan, attorney for plaintiffs. It was not until November 3, 1959, that Mr. Whelan replied and claimed some misrepresentations on the part of defendants in reference to the sale of the restaurant. On November 11, 1959, counsel for defendants notified Mr. Whelan that the claim was unfounded and he again demanded payment. No reply was forthcoming. A similar demand was made on December 14, 1959, and Mr. Whelan promised he would do something about it and would report to defendants' attorney. It was not until January 1960 that respective counsel proposed a meeting of the principals and attorneys. Mr. Whelan agreed to discuss the matter with his clients. On January 28, 1960, not hearing from Mr. Whelan, Mr. Horton wrote him, setting a deadline date for such a meeting. On February 8, 1960, such a meeting was held and certain proposals were made and Mr. Whelan and his clients promised a prompt reply but failed to make any reply. In the meantime, Mr. Horton heard through certain credit groups that the plaintiffs Corey were in serious financial difficulty with creditors. The defendants Weerts, fearing that plaintiffs would be forced into bankruptcy and would have to close the restaurant, hesitated to bring suit and foreclose the chattel mortgage, and accordingly they delayed pressing plaintiffs for payment.

On October 10, 1960, the Coreys filed this action for fraud and immediately served defendants. On October 13, 1960, request was made by Mr. Horton to Mr. Whelan for an open extension of time to plead and it was granted. On October 18, 1960, such extension was confirmed in writing and on that date attorney Whelan visited attorneys Oakes and Horton to discuss a proposition of settlement. Attorney Whelan had just returned from the hospital and was recuperating from an operation, and he stated that his clients had been bothering him, and to satisfy them he had filed this action, but that he did not want to go to trial and hoped the matters would be settled. Attorney Horton stated that he believed that he and attorney Whelan would work together to seek a settlement of the whole matter, including creditors' claims, etc. On October 27, 1960, Mr. Horton talked with Mr. Whelan and it was decided to hold a meeting with Mr. Lawrence Holzman of the Wholesale Credit Men's Association, and on November 1, 1960, such a meeting was held and their mutual problems were discussed. Mr.

Horton told them that he thought this lawsuit was without merit and was only filed to give the Coreys some economic or moral leverage with the creditors and with the Weertses. Mr. Whelan denied any such intent and said that he believed in his lawsuit. Apparently, no satisfactory agreement was reached and Mr. Whelan agreed to talk it over further with his clients.

Mr. Whelan produced a copy of a letter written by attorneys Oakes and Horton and directed to him, dated October 27, 1959, reciting that they wrote him one month before about the Coreys' obligation to their client and recalled that Mr. Whelan said that they would look into the matter, but that they had heard nothing from them, and to consider the letter a 10-day notice to the Coreys, as a demand for all sums due under the promissory note. Mr. Whelan requested that no action be taken thereon at that time. No action was ever commenced on the promissory note.

Mr. Whelan states in his affidavit that about November 2, 1960, his clients demanded action on their claim against defendants Weerts; that his clients had accused him of bad faith in not requiring defendants to answer, and that on November 3, 1960, he dictated a letter, in his clients' presence, to attorney Horton reciting that he presented, in good faith, to the Coreys some suggested settlement, including reconveyance of some Las Vegas property and that they were not interested. The letter related that all discussions of settlement were off and he expected an answer to be filed in the instant action not later than November 7, 1960. This was followed by a statement that if Mr. Weerts was in a position to make a concrete offer of settlement, "well and good." He then proposed some terms on which he might be willing to settle. Then follows the recital: "In the event that you look with disfavor upon this proposition of settlement please get your answer on file so that we can bring the case on for trial at the earliest possible time."

Mr. Corey signed the letter with Mr. Whelan and delivered it in person to Mr. Horton on November 4, 1960. Mr. Horton claimed that he telephoned Mr. Whelan on that same date, according to his best recollection, and discussed further propositions of settlement and that the next day he saw Mr. Whelan on the golf course and told him, jokingly, that he noticed where he (Whelan) had been busy writing letters to impress his clients and said that Mr. Whelan only laughed in reply.

Mr. Horton then averred that thereafter he met with Mr. Holzman in reference to a settlement and that an agreement was reached with him; that he met Mr. Whelan on several occasions thereafter and that Mr. Whelan made no mention to Mr. Horton about the litigation or contemplated settlement and that some time in December 1960 he (Horton) remarked to Whelan that he saw where his clients, the Coreys, had skipped town and that Mr. Corey had left the country and that Mr. Whelan replied with a joking remark.

It appears that on November 14, 1960, the Coreys, through their attorney, had entered a default against the Weertses and on June 13, 1961, had entered a default judgment, unbeknownst to the Weertses or their attorney. Mr. Horton averred that the fact was discovered by Mr. Holzman in his efforts to establish the claims in reference to the final proposal to reach an agreement with all parties concerned and that he notified Mr. Horton of his findings. On gaining this knowledge about the default and the default judgment, defendants' attorney asked Mr. Whelan to stipulate that the default could be set aside, but after conferring with his clients Mr. Whelan said they refused.

On June 27, 1961, counsel for defendants immediately moved to set aside the default and default judgment, which the trial court granted and allowed defendants to answer and file a cross-complaint against plaintiffs on the note and to foreclose the chattel mortgage. Plaintiffs filed an answer to the cross-complaint.

Attorney Whelan testified that the Coreys did assign all their property including the fixtures and liquor stock, over to the San Diego Wholesalers Credit Men's Association during this period, except the possible benefits of the instant action. Mr. Whelan presented a bill for attorney's fees along with the assignment. He also prepared a homestead executed by Mrs. Corey on certain property. Mr. Whelan was advised by Mr. Holzman that an arrangement had been worked out whereby Mr. Weerts was to be released from keeping up payments under the lease; that Weerts was to release the chattel mortgage and the bulk of the property covered by the chattel mortgage was to be sold to help satisfy the creditors and that he said he discussed these matters with the Coreys. This well indicates that plaintiffs knew further negotiations were being carried on in an endeavor to effect a satisfactory agreement with plaintiffs and defendants to resolve their respective claims and that these nego-

tiations were carried on about February 1, 1961, about one month after the default of defendants was taken by plaintiffs without defendants' knowledge.

Had the default been taken within the six-months period, under the circumstances related, no serious question would here be presented. (Code Civ. Proc., § 473.) The principal question is whether the facts, viewed in the most favorable light in support of the trial court's order, support a conclusion that there was an extrinsic mistake, extrinsic accident or extrinsic fraud. ▮ The general rule is that the right of equitable relief from judgments is not confined to judgments procured by fraud, but extends also to judgments wrongfully given by mistake either of the court or of the injured party, unmixed with fraud, and not the result of negligence of the injured party. (*Evry* v. *Tremble,* 154 Cal.App.2d 444 [316 P.2d 49].) Such proceedings may be brought in the same action or in an independent action. (*Watson* v. *Watson,* 161 Cal.App.2d 35, 39 [325 P.2d 1101].) ▮ Further fundamental rules are that the lower court's discretion in granting relief from default will not be disturbed except for manifest abuse; the remedial power of the lower court to grant relief from default should be freely exercised to carry out the policy in favor of trial on the merits; a reviewing court is more disposed to affirm an order granting relief from default when the result is to compel trial on the merits than it is when the judgment by default is allowed to stand; a motion for relief from default based on extrinsic mistake or extrinsic fraud is addressed to the lower court's sound discretion; extrinsic fraud that deprives an adversary of fair notice of a hearing may exist although it was accomplished by mistake; actual fraud is not required; in cases in which the aggrieved party is unable to make out a case of intentional fraud, the courts on motion will extend a liberal interpretation to relieve him from a judgment taken without a fair adversary hearing; the basis for equitable relief from a judgment, whether it be denominated "extrinsic fraud" or "extrinsic mistake," is that which has resulted in a judgment taken under circumstances of unfairness and injustice without affording a party the opportunity to participate in the proceedings; and, on appeal, the burden of showing abuse of discretion or error rests on the appellant. (*Davis* v. *Davis,* 185 Cal.App.2d 788 [8 Cal.Rptr. 874].)

In *Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564, 140

A.L.R. 1328], there is indication that the plaintiff in the action knew that the defendant was incompetent, served her with summons, and she defaulted. In a later action, it was held that this conduct was "constructive fraud" or, in an equity proceeding, may constitute "extrinsic mistake" justifying an order setting aside the default where the mistake has prevented *a fair adversary hearing*. (See also *Bartell* v. *Johnson*, 60 Cal.App.2d 432 [140 P.2d 878]; *Hallett* v. *Slaughter*, 22 Cal.2d 552 [140 P.2d 3]; *Soule* v. *Bacon*, 150 Cal. 495 [89 P. 324]; *Turner* v. *Allen*, 189 Cal.App.2d 753 [11 Cal.Rptr. 630].) ▮ In *Galper* v. *Galper*, 162 Cal.App.2d 391 [328 P.2d 487], it was said that since circumstances not amounting to extrinsic fraud, but of a serious nature, for which defendant was not responsible, and which prevented him from being heard, may exist to create an injustice, the courts in certain situations, such as those labeled "extrinsic accident" and "mistake of fact," may exercise their inherent power and jurisdiction where it is probable that an injustice has resulted, and that lack of vigilance on the part of the person seeking to be relieved must be such as would not have occurred with a man of ordinary care and prudence under the circumstances. ▮ A condition of equitable relief is freedom from negligence or other fault contributing to the unjust judgment. (3 Witkin, California Procedure, § 78, p. 2133.)

The motion for relief from default recites that the motion is based upon the "equitable doctrine of relief from forfeitures caused by extrinsic accident or mistake." No mention is made of Code of Civil Procedure, section 473, in said notice. *Phillips* v. *Trusheim*, 25 Cal.2d 913 [156 P.2d 25], relied upon by plaintiffs, is not here applicable. The trial court made no specific findings on the question but did, upon such noted motion, enter its order setting aside the default and default judgment. In addition to the affidavits filed, considerable testimony was taken in respect to the entire transaction. In his oral summation of the evidence, the judge concluded with the statement:

"Now, whether you call the acts on the part of counsel for plaintiff fraud, or whether you call the conduct on the part of the defendant excusable neglect, or without regard to the label that we want to put on this thing, I don't think it can be said that there was anything here but perhaps actions on the part of one person in good faith, which were completely misinterpreted and acted upon—perhaps that is

the mistake—by the other party, and in the ultimate, what has happened, a judgment has been entered. . . . [C]ertainly to deprive the defendants of their right to their day in court and to an adversary proceeding, in the light of the circumstances that have developed, would at least shock the conscience of this Court, and so I am led to believe and led to the conclusion that in all equity and in all fairness the judgment should be set aside, and that will be the order.''

Apparently, the trial court concluded that there was sufficient extrinsic mistake shown and that defendants were free from fault contributing to the unjust judgment, and that defendants made a satisfactory showing of excuse for not having filed their answer in the action. We perceive no abuse of discretion in this respect.

Order setting aside default and default judgment affirmed.

Coughlin, J., and Brown (G.), J., concurred.

A petition for a rehearing was denied April 16, 1963, and appellants' petition for a hearing by the Supreme Court was denied May 22, 1963. Peters, J. was of the opinion that the petition should be granted.