[Civ. No. 23315. First Dist., Div. One. Jan. 24, 1967.]

BLANCHE McCREADIE, Plaintiff and Respondent, v. D. J. ARQUES, Defendant and Appellant.

Myers, Praetzel & Pierce and Wallace S. Myers for Defendant and Appellant.

Vincent Hallinan, Carl B. Shapiro, Patrick Sarsfield Hallinan and LeRoy W. Rice for Plaintiff and Respondent.

ELKINGTON, J.—This is an appeal by defendant D. J. Arques from an order denying his motion to set aside a default and a default judgment entered on July 30, 1965.

On February 19, 1963, plaintiff Blanche McCreadie filed a complaint in the Superior Court of Marin County against defendant D. J. Arques individually and doing business as Arques Shipyards and against Nick Miscovich alleging breach of contract, negligence and breach of warranty. The substance of the complaint was that Arques had contracted with plaintiff to move her houseboat from its mooring at the Sausalito Yacht Harbor to a new and different mooring on lands owned by Arques near that section of Sausalito known as Waldo Point. The complaint further alleges that the defendant Arques commenced the moving operation using the equipment of Arques and Miscovich and that the project was later abandoned with the houseboat somewhere offshore at Waldo Point. Additional counts alleged negligence and breach of warranty under the same general factual allegations.

On July 18, 1963, the record indicates that the defendants in that action having been duly served with process and having failed to appear or answer within the time allowed, had a default entered against them.

On November 19, 1963, a default judgment in the amount of $10,000 was filed against all defendants.

On July 11, 1965, defendant D. J. Arques (hereafter called defendant) filed a notice of motion to set aside default and default judgment.[1] The motion alleged that "Arques was prevented by extrinsic accident and mistake of fact from presenting his defense" to the action. The parties appear to be in agreement that the motion was for equitable relief and not a statutory motion under Code of Civil Procedure section 473.

The matter came on for a hearing at which evidence was produced and testimony taken on July 8, 1965, and the order denying the motion was filed on July 30, 1965. Appeal was taken from this order.

The defendant was personally served with summons and complaint in April 1963 and promptly turned the matter over to an attorney whom we shall hereafter refer to as "the attorney." The attorney, a family friend, undertook to represent defendant and told him that he would file an answer.

At this point the record outlines a tale of tragedy. It appears that during the sequence of events leading to the appealed-from order (1963-1965) the attorney was suffering from some sort of physical-mental incapacity which prevented him from doing any work. The attorney testified that in April of 1963 he was practicing law in San Francisco, but that he was forced to close his office later in the year.

During that period the attorney testified "I couldn't do any work. Every time I would start to work, I'd just stop and I'd quit, go out and walk around the street, come back, and nothing was done. It ultimately led toward the end of the year that I closed the office, . . ."

The attorney started with a psychiatrist in the summer of 1964. He testified that "They say I developed a pattern of self-defeat and that what ultimately led to what finally caused me to go to them were a series of blackouts where I would find myself some place, not knowing how I got there, not knowing how long I had been there, . . ."

In view of the foregoing, which is undisputed, it is little wonder that defendant may have gotten something less than he had a right to expect by way of legal representation. There is no indication from the record that the defendant knew of the attorney's problems although he evidently did know that

---

[1]While the judgment is against D. J. Arques, individually, and D. J. Arques, dba Arques Shipyard, and Nick Miscovich, the motion for relief is made only by D. J. Arques.

the attorney had closed his San Francisco offices and was working from his home.

Following receipt of the complaint from the defendant in late April 1963 the attorney did nothing. According to allegations in opposition to this motion, the plaintiff's attorney notified the attorney, by letter dated May 17, 1963, that defendant had been served with copies of the complaint and summons. On May 17, 1963, counsel for plaintiff wrote to the defendant personally and informed him that no answer had been filed in the action and that if nothing further was done within 10 days a default would be entered.[2] The defendant immediately gave the letter to the attorney who assured him that it was all a mistake, that there was no default, and that he would see the judge about it. The attorney did nothing. The default was entered on July 18, 1963, and a judgment of default filed and entered on November 19, 1963.

On June 2, 1964, plaintiff's counsel sent a letter to the defendant personally advising him that the default judgment had been entered against him and mentioning a desire to effect a settlement in order to avoid the necessity of taking steps to enforce the payment. Defendant immediately took this letter to the attorney who again assured him that it was all a mistake, that the action was still pending and that there would be a trial on the merits. The defendant was evidently reassured and on June 17, 1964, he replied to the letter of plaintiff's counsel. The tenor of this letter indicated that defendant still thought he was going to court over the matter.

The first writ of execution was issued on September 4, 1964, and returned on January 25, 1965, unsatisfied. The writ had evidently been served on a bank with which defendant did not do business. Plaintiff finally found some assets, however, and on May 12, 1965, the defendant was notified that a San Pedro bank account had been levied upon. Defendant again contacted the attorney who informed the defendant that he would get a bond and have the bank account released. By this time, however, events had run their course and on May 13, 1965, the attorney and his wife came to see the defendant and informed him of the true state of affairs, i.e., advised him that no answer had been filed, that a default had been taken and that it was all over. At this point defendant contacted his present attorney and we have the instant appeal.

---

[2] A letter to the same effect was addressed to the attorney and dated July 8, 1963.

Defendant frames the questions thus: (1) Should a court set aside a default and default judgment where it appears from uncontroverted evidence that the judgment was entered by reason of the mental incapacity of the attorney for defendant, without fault on the part of the defendant? (2) Did the trial court err and abuse its discretion in refusing to grant the motion to set aside default and default judgment on grounds of intrinsic mistake by reason of a delay in making application to set aside, which said delay was occasioned solely by reliance upon defendant's counsel?[3]

Plaintiff phrases the issue somewhat more succinctly: "did the trial court abuse its discretion in denying appellant's motion to set aside the default under all the circumstances and facts of this case?"

We might again note the following dates:

July 18, 1963—default entered;

November 19, 1963—default judgment entered;

June 2, 1964—defendant personally notified by letter that judgment had been taken by default;

May 12, 1965—defendant learns of execution on a bank account and subsequently moves to set aside default on June 11, 1965.

We shall discuss the applicable law.

By his motion to set aside the default and the judgment entered thereon defendant invoked the broad equitable powers of the trial court to grant relief against extrinsic factors, including mistake. ▇ The applicable legal principles are settled. One who has been prevented by such extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him. Where the court that rendered the judgment has a general jurisdiction in law and in equity, the jurisdiction of equity may be invoked by means of a motion addressed to that court. (See *Olivera* v. *Grace*, 19 Cal.2d 570, 575-576 [122 P.2d 564, 140 A.L.R. 1328], and authorities there cited.) ▇ Where the party seeking relief proceeds by motion in the court rendering the judgment, such motion is

---

[3]Mistake is *extrinsic* when it deprives one of an opportunity to present his case to the court and is said to be intrinsic where the other party has been given proper notice of an action, has not been prevented from full participation therein, and has had an opportunity to present his case in court. (*Preston* v. *Wyoming Pac. Oil Co.* (1961) 197 Cal.App.2d 517, 529 [17 Cal.Rptr. 443], and cases cited.) While defendant uses the term *intrinsic* mistake, we would be better advised to call it *extrinsic*.

addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse in the exercise thereof the order of such court will not be disturbed on appeal.

All presumptions are in favor of the correctness of the order and the burden is upon the appellant to show that the court abused its discretion. (See *Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 230-231 [40 Cal.Rptr. 917], and cases there cited.)

In seeking a favorable exercise of the court's discretion the moving party ordinarily has the burden of demonstrating to the court that a more favorable result might be obtained if the matter were to be heard on the merits. (*Hite* v. *Mercantile Trust Co.* (1909) 156 Cal. 765, 768 [106 P. 102]; *Turner* v. *Allen* (1961) 189 Cal.App2d 753, 759 [11 Cal.Rptr. 630]; and see 3 Witkin, Cal. Procedure (1954) pp. 2131-2133; 29 Cal.Jur.2d, pp. 124-125.) On this point the able trial judge below stated, ''Relying only on the evidence presented to me, I am doubtful that the defendant would be able to escape liability for the claimed damage, but a serious question exists as to the value of the boat and defendant might well be able to obtain a more favorable result in this regard.'' There is ample evidence in the record to sustain this conclusion.

Further addressing himself to the court's discretion the moving party should show (1) a proper excuse for permitting the default to be taken, and (2) reasonable diligence to assert and protect his rights.

In this case the excuse for permitting the default to be taken, or the extrinsic mistake, rests upon the neglect of the attorney which is in turn attributable to his mental disability at the time. It is established in this state that the death or serious illness of counsel which prevents an appearance at the trial or a fair presentation of the cause may warrant the intervention of equity to set aside the judgment, at least in a situation wherein the circumstances could not reasonably have been anticipated or avoided by the exercise of due diligence. (*Jeffords* v. *Young* (1929) 98 Cal.App. 400, 405 [277 P. 163] et seq.; *Smith* v. *Busniewski* (1952) 115 Cal.App.2d 124, 126-127 [251 P.2d 697]; and see 3 Witkin, Cal. Procedure (1954) §§ 74-75, pp. 2128-2130. But see Rest., Judgments, § 120; 1 Freeman, Judgments, § 248, pp. 495-499 (5th ed. 1925); 49 C.J.S., Judgments, § 368, pp. 727-729.)

The trial court relied heavily on the case of *Jeffords* v. *Young, supra,* 98 Cal.App. 400, in deciding this aspect of the case. *Jeffords* involved an appeal from a judgment of default

wherein plaintiffs' counsel had advised plaintiffs that they need not appear at trial since the matter would be continued. In fact the cause was not continued because the attorney became ill, passing away shortly thereafter, and was unable to attend to the matter. In the course of its opinion the court noted the normal rule charging a client with the negligence of his attorney but went on to note (p. 406 of 98 Cal.App.) that ''when, without the knowledge or fault of a client, his attorney becomes physically or mentally incapacitated so that his acts or conduct which are controlled thereby leads to a damaging result in pending litigation so detrimental and unjust as to shock the conscience, surely equity will furnish relief.'' The instant case presents a closely analogous situation—the defendant was prevented from presenting his case by the attorney's incapacity to file a responsive pleading. The trial court determined that appellant was not chargeable with neglect for permitting the default, and for taking no action thereon until he received the letter of June 2, 1964. We find no cause to disagree with this determination.

On the question of the exercise of reasonable diligence in asserting and protecting his rights, however, the trial court found the defendant remiss. Upon being informed by the June 2, 1964, letter that a default had been entered against him he continued to rely upon the representations of the attorney that all was well. It was not until May of the following year, when defendant received notice that a bank account had been seized, that he took action and it was not until June 11, 1965, over a year after he was informed of the true state of affairs, that his motion was brought. The trial judge determined that the defendant, in choosing to ignore all of the manifest indications that something was amiss, acted at his peril. This determination seems well supported by law.

''One moving in equity to set aside a default judgment must act diligently in making his motion after he learns of the default judgment.'' (*Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, 856-857 [48 Cal.Rptr. 620, 409 P.2d 700] ; see also 3 Witkin, Cal. Procedure (1954) p. 2133.) This diligence of action has been defined as that which would be exercised by a man of ordinary care and prudence under the circumstances. (See *Corey* v. *Weerts* (1963) 214 Cal.App.2d 416, 423 [29 Cal.Rptr. 533].) In determining whether reasonable diligence has been exercised the court will consider the same factors as are considered in determining whether a default judgment was secured by excusable extrinsic mistake (*Weitz*

v. *Yankosky, supra,* 63 Cal.2d 849, 857-858) with the exception that where the delay in seeking relief from the default is apparently attributable to the defendant's private attorney the case will be treated differently than those cases involving reliance upon other third parties. (*Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, 858-859; *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 528 et seq. [190 P.2d 593].)

In determining whether due diligence has been exercised a court must examine both the time factor and the possible prejudice which might result from setting aside the default. (See *Weitz* v. *Yankosky, supra,* 63 Cal.2d 849, 857; *Benjamin* v. *Dalmo Mfg. Co., supra,* 31 Cal.2d 523, 531; *Hallett* v. *Slaughter* (1943) 22 Cal.2d 552, 557 [140 P.2d 3].) We consider these to be related factors, i.e., the greater the prejudice, the more timely must be the relief sought.

The trial court determined that the relief was not timely sought. In reaching this determination the court had before it evidence that defendant had waited more than a year following written notice that a default had been taken, to seek relief. The court was also aware that defendant is not a man of established naivete. Quite the contrary. The record discloses him to be a man of substance and business acumen.

Moreover, the court found that plaintiff McCreadie would be seriously prejudiced should the default be set aside. On this point the court stated in its "Memorandum and Minute Order": "Plaintiff here claims prejudice, and the existence of such prejudice is readily apparent. This action was filed on February 19, 1963, almost two and one-half years before the motion to set aside default. It involved events taking place in early 1962. Given a timely responsive pleading plaintiff could reasonably expect to have had the matter tried and disposed of before now. If the motion is granted it could easily be one to two years more before a trial could be had, with the result that plaintiff would be forced to carry the burden of proof as to matters four to five years old, all through no fault of her own."

A motion in equity to set aside a default is addressed to the sound discretion of the court. In the absence of a clear showing of abuse of that discretion its determination will not be upset on appeal. (*Shields* v. *Siegel* (1966) 246 Cal.App.2d 334, 337-338 [54 Cal.Rptr. 577].) A denial of relief by a trial court will be scanned more carefully than will be instances where the trial court has granted the requested relief, to the end that cases be heard on the merits wherever possible. (*Brill*

v. *Fox* (1931) 211 Cal. 739, 743-744 [297 P. 25]. Many of the cases discussing the burden of the complaining party in demonstrating abuse of discretion have indeed involved instances where the trial court has granted the requested relief (e.g., *Weitz* v. *Yankosky, supra,* 63 Cal.2d 849; *Beard* v. *Beard* (1940) 16 Cal.2d 645 [107 P.2d 385]; *Corey* v. *Weerts, supra,* 214 Cal.App.2d 416; *Barber* v. *California Credit Council* (1964) 224 Cal.App.2d 635 [36 Cal.Rptr. 84]). But the burden of showing abuse in any case remains on the appellant and, as was stated in *Kessler* v. *Hay* (1962) 211 Cal.App.2d 164, 166 [27 Cal.Rptr. 106], "While it has been said in some cases that this discretion is better exercised when it tends to bring about a decision of the cause upon its merits, the rule itself has never been relaxed." (Cf. *Yarbrough* v. *Yarbrough* (1956) 144 Cal.App.2d 610, 614 [301 P.2d 426]; *Schwartz* v. *Smookler* (1962) 202 Cal.App.2d 76, 80 [20 Cal. Rptr. 507].)

We find no abuse of discretion here.

The order of July 30, 1965, denying relief, is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 22, 1967.