Filed 3/20/15  The Dentists Ins. Co. v. Argueta CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE DENTISTS INSURANCE COMPANY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HECTOR G. ARGUETA,<br><br>    Defendant and Appellant. | D065816<br><br><br><br>(Super. Ct. No. 37-2012-00052876-<br> CU-PO-NC) |


APPEAL from an order of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Hector G. Argueta, in pro. per., for Defendant and Appellant.

Watkins & Letofsky, Daniel R. Watkins and Jennie L. Kruempel, for Plaintiff and Respondent.


Hector Argueta challenges the court's denial of his motion to set aside a default judgment and entry of default in favor of plaintiff The Dentists Insurance Company (Insurer).  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 18, 2012, Insurer filed a complaint against Hector Argueta, West Coast Flooring Center (West Coast), and Prohome Flooring, Inc. Insurer alleged that its insured, Dr. Richard Penman, suffered water damage in his dental office caused by defendants' negligence, and Insurer paid Dr. Penman's property insurance claim. Standing in the shoes of its insured, Insurer sought to recover for defendants' alleged negligence.

Regarding the claimed negligence, Insurer alleged that Dr. Penman contracted with West Coast to construct tenant improvements to his dental office. West Coast then subcontracted with Prohome Flooring, Inc. While the work was being performed, West Coast and/or Prohome Flooring, Inc. allegedly engaged in actions causing water to flood Dr. Penman's dental suite. Dr. Penman made a claim to Insurer, which reimbursed Dr. Penman for his losses. Insurer then brought this subrogation claim against defendants in the amount of $38,896.98. Although Insurer did not specify Argueta's role in the alleged negligence, it included general agency allegations as to all defendants.

About one month after filing the complaint, Insurer filed proofs of service showing that on May 2, 2012 Argueta was served with the summons and complaint (both as an individual defendant and as an authorized agent for Prohome Flooring, Inc.). The process server signed the proofs of service under penalty of perjury, and identified

---

[1]   Argueta's appellate briefs contain various factual assertions unsupported by the appellate record. Under well-settled appellate rules, we disregard these assertions. (See *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 195.)

Argueta's residence as the address where service took place and stated the service occurred on May 2, 2012 at 3:30 p.m.  The proofs of service described Argueta as a 42-year-old Hispanic male, with "black hair brown eyes 5'10" 175 lbs beard." (Capitalization omitted.)

Six weeks later, Insurer filed petitions for entry of default against Prohome Flooring, Inc. and Argueta.  On June 13, 2012, the clerk entered defaults against these defendants.

One week later, on June 20, Argueta filed a demurrer to Insurer's complaint.

Three weeks later, on July 10, the court entered a default judgment against Prohome Flooring, Inc. and Argueta in the amount of $42,245.73.

Two months later, in September 2012, the court (Judge Thomas Nugent) held a hearing on Insurer's motion to strike Argueta's demurrer.  The minutes state that Argueta appeared "self represented," and Mark White "specially appear[ed]" for Prohome Flooring, Inc.[2]  After argument, the court ordered Argueta's demurrer "off calendar as moot."  The court stated that because the proofs of service presumptively showed valid personal service and the court had previously entered a default and default judgment, Argueta was " 'out of court' " unless he successfully sets aside the default or appeals the default judgment.

---

[2]    According to the information in the appellate record, White is a paralegal.  It is unclear whether the court was aware White was not an attorney and/or whether the court accepted his appearance at this hearing and at subsequent hearings.

3

Five days later, Argueta (without legal representation) moved to vacate the default and default judgment. In support, he submitted a declaration stating he had not been served with the summons on May 2, 2012, and instead had been served on May 22, 2012, and therefore the June 13 entry of default was premature. Argueta challenged the veracity of the process server's representations in the proof of service. For example, Argueta said that he is not five feet 10 inches tall as stated in the proofs of service, and instead is five feet eight inches tall, and that he does not have black hair or a beard and instead he is bald.

Opposing the motion, Insurer submitted declarations confirming the May 2, 2012 service. Insurer also argued that to the extent Code of Civil Procedure section 473 (§ 473) provides a basis for relief from default based on Argueta's "mistake" in not timely responding to the complaint, the court should condition any such relief on Argueta paying Insurer's attorney fees and costs of $1,650.

On December 7, 2012, the court (Judge Timothy Casserly) held a hearing at which it agreed with Insurer's second position. As reflected in the written minutes for the hearing, the court ordered the default and default judgment were to be vacated "conditioned on": (1) Argueta filing his answer to Insurer's complaint within 15 days; and (2) Argueta paying Insurer's attorney fees/costs of $1,650 within 15 days. Argueta was present and "self represented" at the hearing. Mark White "specially appear[ed]" for Prohome Flooring, Inc.

During the next 15 days, Argueta took no action to comply with the mandatory conditions. Instead, Argueta waited another five days, and then on December 27 he

4

refiled his demurrer that he had filed six months earlier.  Argueta made no attempt to pay the ordered fees.

Three months later, on March 29, 2013, the court (Judge Casserly) heard Insurer's motion to strike Argueta's December 27 demurrer.  Appearing at the hearing were: Insurer's counsel; Argueta who was "self represented"; and Mark White who was "specially appearing for Prohome Flooring, Inc."  After argument, the court ordered the demurrer off calendar, stating the default and default judgment "remain[] in force because [Argueta] failed to comply with this Court's December 7, 2012, order."  The minute order identified the conditions for vacating the prior default (payment of Insurer fees/costs and filing an answer, both within 15 days), and stated Argueta "failed to satisfy either of the two conditions."

Five months later, on August 29, 2013, the court entered an amended judgment against Argueta and Prohome Flooring, Inc.  The sole modification was a reduction in the judgment amount to $14,745.73, based on a codefendant settlement.

Two months later, on October 28, Argueta moved to set aside the default and default judgment under section 473.[3]  Attorney Herbert Papenfuss filed the moving papers on Argueta's behalf.  Papenfuss argued that Argueta's failure to satisfy the conditions of the court's December 7 order was the fault of paralegal Mark White. Argueta's supporting declaration read as follows:

---

3       Prohome Flooring, Inc. also moved for relief from default, but is not a party in this appeal.  We therefore discuss this defendant only as relevant to Argueta's appeal.

"[After] I was sued by [Insurer] . . .[,] I hired Mark White to help me with this case. He told me he was a paralegal and knew a lot about the law.

" . . . English is my second language. I speak well enough [English] to get by, but that that is all. Mark White said he would take care of this matter for me and I let him do it.

[¶] . . . [¶] . . .

"I was in Court when the Judge ruled that my Default had been set aside and I had to file another document called an Answer and pay about One thousand, Six Hundred Dollars ($1,600) to the other side. However, I did not understand any of this. I did not know what a default was back [then]. I did not know what an Answer was and I did not understand I had to pay [$1,600] to keep the case moving along. When I asked Mark White what had happened, he said, we won, the case is moving forward, you will get a trial date in a few months. He did not tell me I had to pay money; he did not tell me I had to file an answer; he did not notify my insurance company of what happened although he promised to do so. He then just disappeared.

" . . . The next thing I knew, a Judgment had been entered against me and when I received the Judgment papers, I contacted Mr. Papenfuss and he explained to me what had happened and how Mark White had not done anything to protect me.

" . . . I am not responsible for the loss that is involved in this lawsuit. I have paid money to defend myself and I had hired Mr. White to defend myself and work with my insurance company, but he has done nothing.

" . . . I request that the Court give me one more chance, now that I am represented by Mr. Papenfuss, to defend this case. I do not have enough money to pay a [$14,745] Judgment. I have very few assets and the only hope I have of paying this Judgment is to get the insurance company involved but they will not get involved while this Judgment is in place."

Based on this declaration, Papenfuss argued Argueta's "failure to follow the

Court's December 7 ruling" was "based on mistake and inadvertence and neglect" and "is

6

a classic situation in which [he] has been defrauded and the exact kind of situation that Section 473 was designed to correct." Papenfuss stated Argueta was willing to pay the monetary sanctions previously ordered and any additional sanctions to compensate for Insurer's additional attorney time.

In response, Insurer initially noted it had never been served with a substitution of attorney form. On the merits, Insurer argued section 473 was inapplicable for various reasons, including (1) the motion was untimely because it was filed more than six months after the entry of default; and (2) Argueta's claimed reliance on a paralegal was not a valid basis for obtaining relief from default under section 473.

At the February 21, 2014 hearing, the parties orally argued the motion.[4] After the hearing (which was not reported), Judge Casserly (the same judge who imposed the two conditions at the December 7, 2012 hearing) denied Argueta's motion to set aside the default and default judgment.

## DISCUSSION

### I. *Section 473*

Argueta contends the court erred in denying his October 2013 motion for relief from default under section 473.

### A. *Legal Principles*

Section 473 permits a trial court to grant relief from a default caused by a party's "mistake, inadvertence, surprise, or excusable neglect." (§ 473, subd. (b).) To obtain

---

4    Argueta was not present at the hearing, but Attorney Papenfuss "specially appear[ed]" for Argueta.

7

relief, a party must satisfy two elements. First, the party must show his or her neglect or mistake was "excusable," i.e., the acts of a reasonably prudent person under the same circumstances. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 (*Rappleyea*).) Second, the moving party must establish the motion was timely. (*Ibid.*) To satisfy the timeliness requirement, the moving party must show: (1) the motion for relief was filed within six months after the challenged judgment or order; and (2) the party was diligent in seeking relief within a "reasonable time" after discovery of the mistake. (§ 473, subd. (b); *Elston v. City of Turlock* (1985) 38 Cal.3d 227, 234.)

A trial court has broad discretion in determining whether a moving party has met its burden on these statutory requirements. (*Rappleyea, supra*, 8 Cal.4th at p. 981; *In re Marriage of Jacobs* (1982) 128 Cal.App.3d 273, 280.) In considering a challenge to the court's section 473 order, we draw all reasonable inferences from the evidence and review the record in the light most favorable to the court's determinations. (See *In re Heather A.* (1996) 52 Cal.App.4th 183, 193.)

## B. *Analysis*

The court properly denied Argueta's section 473 motion because it was time barred.

Argueta's default was entered on June 13, 2012. On December 7, 2012, the court granted Argueta's motion for relief from the default "<u>conditioned on</u>" Argueta's payment of the opposing party's fees and filing an answer. When Argueta failed to timely comply with these conditions, the default and default judgment remained in effect by operation of law. Argueta then waited until October 2013 to file a second motion to vacate under

8

section 473.  On this record, the motion—filed more than one year after the entry of default—was untimely.  "The six-month time limit for granting statutory relief is jurisdictional and the court may not consider a motion for relief made after that period has elapsed."  (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 42 (*Manson*).)

The fact that Argueta filed the section 473 motion within six months of the amended default judgment does not alter our conclusion.  The six-month period runs from the date of the default and not from the later default judgment.  (*Manson, supra*, 176 Cal.App.4th at p. 42; *Rutan v. Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 970; *Nemeth v. Trumbull* (1963) 220 Cal.App.2d 788, 791.)  "The reason for the rule is that vacation of the judgment alone ordinarily would constitute an idle act; if the judgment were vacated the default would remain intact and permit immediate entry of another judgment giving the plaintiff the relief to which his complaint entitles him."  (*Rutan, supra*, 173 Cal.App.3d at p. 970.)  Because the entry of default has the effect of terminating a party's right to defend, a defendant seeking to litigate the matter on the merits must timely vacate the entry of default in addition to the default judgment.  (*Ibid.*; see *Title Ins. & Trust. Co. v. King Land & Improv. Co.* (1912) 162 Cal. 44, 46; *In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1037.)

Further, even assuming Argueta's motion was timely, the court had a reasonable basis to find Argueta did not satisfy the statutory diligence requirement.  (§ 473.)  Argueta personally appeared at the March 20, 2013 hearing at which the court made clear the default and default judgment had not been vacated because Argueta had not timely fulfilled the two conditions.  At that point, Argueta had all the necessary information to

9

trigger a reasonable understanding that he would need to take action if he wished to defend against Insurer's claims on the merits. By waiting another six months to file his section 473 motion, Argueta did not satisfy the statutory diligence requirement. (See *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1181; *Ludka v. Memory Magnetics Internat.* (1972) 25 Cal.App.3d 316, 321-322.)

## II. *Extrinsic Fraud or Mistake*

Argueta alternatively contends he was entitled to relief from default under the court's equitable powers based on extrinsic fraud or mistake.

### A. *Legal Principles*

A judgment "may be set aside in equity when it is obtained by extrinsic fraud or mistake. . . . The 'essential characteristic' of extrinsic fraud 'is that it has the effect of preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.'. . . Extrinsic mistake is 'a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits. . . .' " (*Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1044; see *Kulchar v. Kulchar* (1969) 1 Cal.3d 467, 471-473 (*Kulchar*).)

Under either theory, relief is not available if the party had notice and the opportunity to participate in the action. (*Kulchar, supra*, 1 Cal.3d at p. 472; *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 27.) Additionally, a party is not entitled to relief if the party contributed to the alleged extrinsic mistake. (*Kulchar, supra*, 1 Cal.3d at p. 473.) " 'If the complainant was guilty of negligence in permitting . . . the

10

mistake to occur[,] equity will deny relief.' " (*Ibid.*)  Further, if the moving party claims the default was caused by a third party's fraud or mistake, the moving party has the burden to show justifiable reliance on the third party's actions.  (See *Weitz v. Yankosky* (1966) 63 Cal.2d 849, 855; *Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 507; *Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1148.)  Reliance on a third party constitutes a satisfactory basis for equitable relief only if the reliance was reasonable. (*Weitz, supra*, 63 Cal.2d at p. 855.)

After section 473's six-month period has expired, the public policy favoring finality predominates, and relief may be granted only in exceptional circumstances. (*Rappleyea, supra*, 8 Cal.4th at pp. 981-982; *Gibble v. Car-Lene Research, Inc.* (1998) 67 Cal.App.4th 295, 314-315.)  A moving party has the burden to show entitlement to equitable relief.  (See *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 291.)  An order denying a motion for equitable relief must be upheld unless the moving party establishes a manifest abuse of discretion.  (*In re Marriage of Wipson* (1980) 113 Cal.App.3d 136, 141.)  " 'All presumptions are in favor of the correctness of the order and the burden is upon the appellant to show that the court abused its discretion.' [Citation.]" (*Ibid.*)

B.  *Analysis*

Argueta did not meet his burden to establish extrinsic fraud.  There was no evidence Insurer did anything to prevent Argueta from complying with the conditional order.  " 'The essence of extrinsic fraud is one party's preventing *the other* [party] from having his day in court.' [Citation.]" (*Sporn v. Home Depot USA, Inc*. (2005) 126

11

Cal.App.4th 1294, 1300, italics added.)  There are no facts showing Insurer engaged in any such conduct.

The court additionally did not abuse its discretion in rejecting Argueta's contention that the default was the result of an extrinsic mistake.  Argueta argues he is entitled to equitable relief because he was unaware of the conditions imposed at the December 7 hearing.  However, Argueta personally appeared at the December 7 hearing when the court imposed the conditions, and admits he speaks and understands English (even though it is not his first language).  The December 7 minutes plainly state the court's ruling vacating the earlier default and default judgment was expressly "conditioned on" Argueta's performing two tasks within 15 days:  (1) paying Insurer's attorney fees; and (2) filing an answer.

Argueta contends that despite this notice, his failure to comply with the conditions was excusable because his nonaction was the result of "fraud by MARK WHITE."  In his declaration, Argueta stated that after the December 7 hearing White told him there was nothing more for him to do to obtain a trial on the merits, and that he relied on this statement to take no affirmative steps regarding the default.

The trial court (Judge Casserly) had a reasonable basis to question the validity of this statement.  Judge Casserly had presided over the December 7 hearing and therefore was in a strong position to accurately evaluate whether the conditions had been clearly communicated, whether Argueta had appeared to have understood the conditions and was capable of meeting them, and whether Argueta would have subjectively believed these conditions were not mandatory or required.  Based on its observations at the December 7

12

hearing and the information in Argueta's declaration showing he could read and understand English, the court had a reasonable factual basis to reject Argueta's later claims that he relied on White's assurances to believe nothing needed to be done. We are bound by the court's factual determinations in ruling on motions to vacate a default, and we have no authority to reweigh the evidence and second-guess credibility determinations. (See *Estate of Carter* (2003) 111 Cal.App.4th 1139, 1154.)

Moreover, even assuming Argueta relied on White's statements, the evidence supports the court's implied finding that any such reliance was not justifiable. Argueta acknowledged that when he retained White, he understood White was a paralegal rather than an attorney. A reasonable person is generally charged with knowledge that a paralegal is not qualified or licensed to provide legal advice. Further, to the extent that White misled Argueta about the scope of his legal expertise, these misrepresentations are not enough to show reasonable reliance where Argueta *knew* about the default-relief conditions. (See *McCreadie v. Arques* (1967) 248 Cal.App.2d 39, 46 [once defendant had notice of entry of default, reliance "upon the representations of the attorney that all was well" was unreasonable].) Argueta personally appeared at the hearing when the court imposed those conditions and admits he speaks and understands English. These facts negate any claim of reasonable reliance to support relief from default. (See *Weitz v. Yankosky, supra*, 63 Cal.2d at p. 855; *Cruz v. Fagor America, Inc., supra*, 146 Cal.App.4th at p. 507.)

13

Under our judicial system's finality rules, Argueta's recourse for White's claimed false statements is an action against White, and not a vacation of the default that was entered 16 months before Argueta moved for relief.

In his appellate briefs, Argueta makes various additional assertions about White that are not supported by evidence contained in the appellate record. For example, he asserts that White appeared at the hearing as if he was the person representing Argueta and he "was the one talking to the judge and opposing attorney." He also asserts that "MARK WHITE was arrested and charged with fraud." There is no evidence in the appellate record supporting these assertions.

We also find unhelpful Argueta's assertions in his appellate brief that he "feels" attorney Papenfuss "did not properly argue the [section 473] motion" and that conduct by Papenfuss prevented him from attending the February 21, 2014 hearing. There is no evidence Argueta sought relief in the trial court based on Papenfuss's conduct, and there is no evidence to support the assertions that Papenfuss engaged in any improper or wrongful conduct.

Argueta emphasizes his lack of experience with the law. However, self-representation in itself does not provide grounds for granting relief from default. "Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. [Citation.] . . . A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation." (*Rappleyea, supra*, 8 Cal.4th at pp. 984-985.)

14

DISPOSITION

Order affirmed.  The parties to bear their own costs.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

15